# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | |
|---|---|
| ALAN D. MAYBERRY,           ) | |
|                              ) | |
|         Plaintiff,       ) | |
|                              ) | |
|         v.               ) | No. 4:13 CV 7000 SNLJ/DDN |
|                              ) | |
| CAROLYN W. COLVIN,       ) | |
| Acting Commissioner of Social Security,   ) | |
|                              ) | |
|         Defendant.     ) | |

## REPORT AND RECOMMENDATION

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying the application of plaintiff Alan D. Mayberry for disability insurance benefits under Title II of the Social Security Act (the Act), 42 U.S.C. § 401, et seq. and for supplemental security income under Title XVI of that Act, 42 U.S.C. §§ 1381, et seq. The action was referred to the undersigned United States Magistrate Judge for review and a recommended disposition under 28 U.S.C. § 636(b). For the reasons set forth below, the decision of the Administrative Law Judge should be affirmed.

## I. BACKGROUND

Plaintiff Alan D. Mayberry, born October 17, 1958, applied for Title II and Title XVI benefits on May 18, 2006. (Tr. 79-87.) He alleged an onset date of disability of April 18, 2006, due to Crohn's disease. (Tr. 112.) Plaintiff's applications for Title II and Title XVI benefits were denied initially on June 21, 2006, and he requested a hearing before an ALJ. (Tr. 35-42.)

On December 10, 2008, following a hearing, the ALJ found plaintiff not disabled. (Tr. 24-33.) On November 24, 2009, the Appeals Council denied plaintiff's request for review. (Tr. 4-6.) On September 22, 2010, the district court remanded the case to the ALJ at the request of the Commissioner. (Tr. 645.) On June 8, 2011, the ALJ found that plaintiff was disabled on but not before October 17, 2008. (Tr. 1476-83.) On June 29, 2013, the Appeals Council denied

plaintiff's request for review.  (Tr. 612-14.)  Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II.  MEDICAL HISTORY

On May 8, 2005, plaintiff complained of left side numbness and blood in his stool and urine.  James Keith, D.O., assessed Crohn's disease and abdominal pain.  (Tr. 566.)

On August 18, 2005, plaintiff complained of low abdominal pain and seven or eight bowel movements per day.  Dr. Keith assessed Crohn's disease, B12 deficiency and depression.  (Tr. 567.)

On March 1, 2005, plaintiff received an assessment of Crohn's disease and hyperlipidemia.  (Tr. 561.)

On March 28, 2006, plaintiff arrived at the emergency room, complaining of abdominal pain that began five days earlier, bloody stools, and seven or eight bowel movements per day.  He reported an initial diagnosis of Crohn's disease in 1997.  He further reported that he lived with his fiancé, worked as a welder, and had smoked one pack of cigarettes per day.  Catherine Iasollo, M.D., replaced sulfasalazine with mesalamine.[1]  CT scans of the abdomen revealed ileum wall thickening and enhancement consistent with Crohn's disease and marked degenerative changes of the sacroiliac joints.  His medications included Lovastatin, fluoxetine, omeprazole, and prednisone.[2]  The impression of Stephen Harvey Greenberg, M.D., was Crohn's disease exacerbation, coronary artery disease, anemia, gastroesophageal disease, and depression.  On March 31, 2006, plaintiff was discharged.  (Tr. 217-89.)

On April 3, 2006, plaintiff reported bloody stools earlier that morning.  Dr. Keith assessed Crohn's disease and depression and increased the Prozac dosage.[3]  (Tr. 562.)

---

[1]  Sulfasalazine and mesalamine are used to treat bowel disease.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[2] Lovastatin is used to control cholesterol levels.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).  Fluoxetine is an antidepressant.  Id.  Omeprazole is used to treat stomach and esophagus problems by reducing stomach acid production.  Id.  Prednisone is a corticosteroid that reduces allergic-type symptoms.  Id.

[3] Prozac is an antidepressant.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On April 18, 2006, plaintiff arrived at the emergency room, complaining of severe abdominal cramps and pain with no bowel movements but with feculent vomiting. X-rays of the abdomen suggested persistent partial ileus obstruction. On April 21, 2006, plaintiff underwent a small bowel and colon resection. The impression of Preethi Yerram, M.D., was partial bowel obstruction, Crohn's disease flare, gastroesophageal reflux disease, and coronary artery disease. On April 25, 2006, plaintiff was discharged. (Tr. 292-344.)

On May 2, 2006, plaintiff complained of leg numbness and gas pain. The impression of Brent W. Miedema, M.D., was right lateral femorocutaneous nerve neuropraxia.[4] (Tr. 345-46.)

On May 17, 2006, plaintiff reported no problems since his discharge on April 25, 2006, except for minor discomfort caused by bowel gas movement. He reported that he and his spouse were terminated by their employers due to time taken for medical leave and would have no medical insurance after the following day. Dr. Iasollo's impression was Crohn's disease, gastroesophageal reflux disease, depression, and hypokalemia.[5] (Tr. 202-07.)

On May 18, 2006, plaintiff had no complaint except for persistent low abdominal pain that bowel movements exacerbated. Clinton G. Wallis, M.D., recommended Imuran but deferred the prescription due to plaintiff's lack of insurance coverage.[6] (Tr. 347-49.)

On May 23, 2006, plaintiff reported only rare gas pain and three or four bowel movements per day. Robert E. Hoppes, M.D., found improvement with femoral cutaneous neuropraxia. (Tr. 419-20.)

On June 7, 2006, plaintiff reported vomiting for the past two weeks and that abdominal pain prevented sleep. Dr. Keith assessed Crohn's disease and postoperative status and prescribed Percocet.[7] (Tr. 560.)

---

[4] Neuropraxia is the mildest type of focal nerve lesion that produces clinical deficits. Stedman's Medical Dictionary 1307 (28th ed., Lippincott Williams & Wilkins 2006) (Stedman).

[5] Hypokalemia is a deficiency of potassium ions in the bloodstream. Stedman at 934.

[6] Imuran is used to treat bowel conditions. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[7] Percocet is used to relieve moderate to severe pain. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On June 21, 2006, plaintiff reported that Pentasa and Imuran caused nausea and vomiting and that he discontinued Pentasa.[8] He reported constant abdominal pain, which he rated as six of ten, and one to ten bowel movements per day with occasional blood. He further reported that he had obtained Medicaid coverage. The impression of Christopher Robert Bartalos, D.O., was Crohn's disease, and he recommended Remicade therapy.[9] (Tr. 383-85.)

On November 2, 2006, plaintiff reported abdominal pain and multiple bowel movements per day with very little blood. Dr. Bartalos' impression was Crohn's disease, and he started plaintiff on Remicade therapy and increased the Imuran dosage. (Tr. 289-91.)

On November 7, 2006, plaintiff reported that the increased dosage of Imuran caused vomiting. Dr. Keith assessed Crohn's disease. (Tr. 574.)

On December 15, 2006, plaintiff reported three to five bowel movements per day accompanied by pain, cramps, and blood. He received an infusion of Remicade. The impression of Michelle L. Matteson, APRN, was Crohn's disease. (Tr. 392-94.)

On January 4, 2007, plaintiff reported that Remicade therapy improved his symptoms by increasing his energy and decreasing the amount of blood and number of bowel movements. Plaintiff also reported increased fatigue and increased reflux symptoms. Dr. Bartalos assessed Crohn's disease, abdominal pain, and gastroesophageal disease. He increased the dosage of Imuran, prescribed Cipro and Flagyl, and replaced Prilosec with Nexium.[10] (Tr. 395-97.)

On February 6, 2007, plaintiff complained of back pain and the inability to sleep due to nightmares. Dr. Keith diagnosed Crohn's disease and insomnia. (Tr. 576.)

On February 9, 2007, plaintiff reported that the increased Imuran dosage caused insomnia, strange dreams, and pain near the kidneys. He further reported bloody stools two days earlier and

---

[8] Pentasa is used to treat bowel disease. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[9] Remicade is used to treat Crohn's disease by weakening the immune system. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[10] Cipro and Flagyl are antibiotics. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014). Prilosec is also known as omeprazole. Id. Nexium is used to treat stomach and esophagus problems by reducing stomach acid production. Id.

seven or eight bowel movements per day.  Nurse Matteson performed bloodwork on plaintiff and suggested increased frequency of Remicade treatment.  (Tr. 433-35.)

On April 5, 2007, plaintiff reported increased abdominal pain, bleeding, and incontinence and that he discontinued Cipro and Flagyl.  Dr. Bartalos increased the dosage of Imuran, prescribed prednisone, and decreased the frequency of Remicade treatment.  He also scheduled a colonoscopy.  (Tr. 436-38.)

On April 6, 2007, plaintiff underwent a colonoscopy procedure.  John B. Marshall, M.D., found mild to moderate mucosal activity consistent with active Crohn's disease and agreed with Dr. Bartalos' course of treatment.  (Tr. 851-52.)

On April 19, 2007, plaintiff reported improved pain and four to five bowel movements per day but complained of insomnia.  Dr. Bartalos' impression was Crohn's disease flare, and he prescribed Ambien and morphine.[11]  (Tr. 439-41.)

On May 15, 2007, plaintiff complained of fever, cough, headaches, and chills.  Dr. Keith assessed upper respiratory infection and prescribed Rocephin.[12]  (Tr. 577.)

On May 31, 2007, plaintiff reported severe Crohn's disease exacerbation that began two weeks earlier.  He further reported two or three bowel movements per day and several bowel movements per night.  He complained of significant pain and difficulty sleeping.  Dr. Bartalos' impression was Crohn's disease with exacerbation, and he increased the frequency of Remicade treatment and prescribed Elavil.[13]  He further noted a trend of significant improvement with Crohn's disease for two to four weeks following a Remicade treatment session followed by relapse.  (Tr. 442-44.)

On July 5, 2007, plaintiff reported falling on a rock and landing on his right ribs and that it caused pain during inhalation.  He received a diagnosis of right rib contusion and prescriptions for ibuprofen and Percocet.  (Tr. 578.)

---

[11] Ambien is used to treat sleep problems in adults.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[12] Rocephin is antibiotic.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[13] Elavil is an antidepressant.  WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On July 10, 2007, plaintiff complained of continued abdominal pain that fluctuated from a seven of ten rating to a ten of ten rating and occasional bloody stools. He reported improved energy and weight gain and that Percocet controlled his pain. Dr. Bartalos' impression was Crohn's disease with exacerbation, and he increased the dosage of Imuran and discontinued Elavil. He further recommended that plaintiff stop smoking. (Tr. 445-47.)

On August 9, 2007, he reported that he had nearly returned to his baseline bowel movements frequency but expressed concern regarding the loss of Medicaid. Dr. Bartalos prescribed Wellbutrin and recommended that plaintiff stop smoking.[14] (Tr. 448-50.)

On October 3, 2007, plaintiff reported difficulty sleeping and bloody stools. He complained that seven to ten days after Remicade treatment, he experienced abdominal pain and ten to fifteen bowel movements per day. Nurse Crawford administered Remicade. (Tr. 1065-67.)

On October 15, 2007, an abdominal ultrasound revealed signs of gallbladder disease. A thoracic spine ultrasound revealed signs of osteoporosis, mild kyphosis, but no other abnormalities. (Tr. 590.)

On October 17, 2007, plaintiff complained of a progressive decline in his condition, including increased abdominal pain, bloody stools, nausea, vomiting, and intermittent abdominal bloating. He also reported stress due to his efforts at obtaining disability benefits. Dr. Bartalos' impression was ileocolonic Crohn's disease and Crohn's disease flare. Abdominal X-rays revealed no bowel obstruction. Dr. Bartalos prescribed prednisone and Percocet and recommended abdominal CT scans. (Tr. 542-44, 551.)

On November 1, 2007, plaintiff reported that prednisone improved the abdominal pain and frequency of bowel movements. CT scans of the abdomen revealed chronic thickening of the ileum and cecum and calcified marking on the transverse colon. Dr. Bartalos' impression was Crohn's disease and chronic abdominal pain, and he reduced the dosage of prednisone and recommended that plaintiff discontinue smoking. (Tr. 545-47, 552-55.)

On November 7, 2007, nurse Crawford indicated that plaintiff had no insurance coverage. (Tr. 1068.)

---

[14] Wellbutrin is an antidepressant. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On December 19, 2007, plaintiff arrived at the emergency room, complaining of pain that radiated to the groin and infrequent urination. CT scans of the abdomen revealed a right ureteral stone. CT scans of the chest revealed a nodular density in the right lower lobe. On December 20, 2007, plaintiff received an esophagogastroduodenoscopy, which revealed a hiatus hernia and ulcer.[15] Rick Kunkel, M.D., diagnosed a kidney stone and lung nodule. Plaintiff was discharged after conservative treatment. (Tr. 453-517.)

On January 2, 2008, plaintiff reported esophagus ulcers. Dr. Keith assessed Crohn's disease and prescribed Buspar.[16] (Tr. 584.)

On February 13, 2008, plaintiff reported four of five bowel movements per day, occasionally cramps, and fatigue. Nurse Crawford administered Remicade. (Tr. 1437.)

On February 23, 2008, Carl F. Blatt, Jr., M.D., noted that the ulcer in plaintiff's esophagus extended to the stomach. He recommended an upper endoscopy. (Tr. 528.)

On March 3, 2008, plaintiff received an esophagogastroduodenoscopy, which revealed a normal esophagus, ulcer, and hiatus hernia. Dr. Blatt prescribed Prevacid.[17] (Tr. 514-26.)

On April 17, 2008, plaintiff reported receiving Remicade at five to six week intervals. He noted that for the three weeks following the Remicade treatment, he had two or three bowel movements per day and that afterwards he had four to five bowel movements per day, increased abdominal pain, and bloody stools. He further reported that he continued to smoke but hoped to quit. Dr. Bartalos' impression was ileocolonic Crohn's disease. He suspected bacterial overgrowth or malabsorption and prescribed Cipro, Flagyl, and cholestyramine.[18] (Tr. 548-50.)

On April 28, 2008, plaintiff underwent an echocardiogram, which revealed no ischemic response to stress. (Tr. 556-58.)

---

[15] A hiatus hernia is a hernia at the esophageal area of the stomach. Stedman at 880.

[16] Buspar is used to treat anxiety. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[17] Prevacid is used to treat stomach and esophagus problems by reducing stomach acid production. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[18] Cholestyramine is used to control cholesterol. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On August 1, 2008, plaintiff complained of twelve to fifteen bowel movements per day during the past week, cramps, and pain. Nurse Crawford administered Remicade. (Tr. 1438.)

On July 15, 2008, plaintiff complained of chronic abdominal pain and reported that he had quit smoking. Dr. Bartalos' impression was ileocolonic Crohn's disease, pulmonary nodule, and chronic abdominal pain. He recommended an increase in Remicade, a colonoscopy, and a pulmonary consultation and prescribed loperamide.[19] (Tr. 1172-74.)

On July 31, 2008, plaintiff underwent a colonoscopy, which revealed a right hemicolectomy, a polyp in the left colon, internal hemorrhoids, but no inflammation. (Tr. 845-47.)

On August 4, 2008, plaintiff complained of fatigue, seven to eight bowel movements per day, and lower abdominal cramps. Nurse Crawford administered Remicade. (Tr. 1446.)

On August 14, 2008, plaintiff reported a pulmonary nodule in his right lower lung. He further reported smoking one pack of cigarettes per day and exposure to significant secondhand smoke from family members. He further reported daily coughing spells in the mornings, wheezing at rest, and dyspnea when walking more than 300 feet or climbing more than a flight of stairs. CT scans of the chest revealed that the pulmonary nodule was no longer present. Vamsi Pallavi Guntar, M.D., assessed chronic bronchitis, Crohn's disease, depression, and anxiety. He prescribed Combivent and nicotine patches and recommended a pulmonary function test and that he stop smoking.[20] (Tr. 836-41.)

On September 9, 2008, plaintiff reported no severe symptoms of Crohn's disease. Nurse Crawford administered Remicade. (Tr. 1439.)

On September 16, 2008, Dr. Bartalos stated that he took plaintiff under his care two years earlier and that plaintiff suffered Crohn's disease that caused abdominal pain, fatigue, and intermittent diarrhea. He further reported plaintiff's treatment consisted of infused and oral medication. (Tr. 611.)

---

[19] Loperamide is used to treat sudden diarrhea. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[20] Combivent is used to treat symptoms of ongoing lung disease. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On October 9, 2008, plaintiff reported reduced tobacco use of one-third pack of cigarettes per day. Dr. Gunta recommended use of Nicotrol cartridges and that he discontinue smoking.[21] Plaintiff further reported occasional chest discomfort and coughing spells in the morning. Pulmonary function tests revealed no evidence of chronic obstructive pulmonary disease. Dr. Gunta assessed chronic bronchitis, tobacco dependence, anxiety, and depression. (Tr. 828-31.)

On October 15, 2008, plaintiff reported no abdominal pain and normal bowel movements. Nurse Crawford administered Remicade. (Tr. 1441.)

On October 21, 2008, plaintiff reported improvement with the increased dosage of Remicade but continued abdominal discomfort and intermittent bloody stools. Dr. Bartalos noted that a colonoscopy and bowel biopsies revealed no active disease. His impression was inactive ileocolonic Crohn's disease, chronic abdominal pain, and reflux disease, and he recommended a endoscopy study. (Tr. 1168-70.)

On November 14, 2008, abdominal X-rays revealed no abnormalities. (Tr. 1167.)

On November 18, 2008, plaintiff complained of bloody stools, diarrhea, occasional abdominal cramps, and seven to eight bowel movements per day. Nurse Crawford administered Remicade. (Tr. 1442.)

On November 24, 2008, abdominal X-rays revealed post-surgical changes but no other acute abnormalities. (Tr. 1166.)

On December 22, 2008, plaintiff complained of fatigue and slight cramping but denied other symptoms of Crohn's disease. Nurse Crawford administered Remicade. (Tr. 1443.)

On January 20, 2009, plaintiff reported several bowel movements per day but less cramping. Nurse Crawford administered Remicade. (Tr. 1091.)

Also on January 20, 2009, plaintiff described himself as doing remarkably well and that the symptoms reappeared only two to three days before the next Remicade treatment. He reported markedly improved energy, improved energy, steady weight gain, but eight bowel movements per day. He further reported that he recently married. Dr. Bartalos' impression was ileocolonic Crohn's disease, chronic abdominal pain, and diarrhea. He increased the dosage of Imuran. (Tr. 1162-64.)

---

[21] Nicotrol is used to stop smoking cigarettes. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On January 26, 2009, plaintiff complained of six or seven bowel movements per day. Nurse Crawford administered Remicade. (Tr. 1444.)

On March 4, 2009, plaintiff complained of stomach cramps, fatigue, and three or four bowel movements per day. Nurse Crawford administered Remicade. (Tr. 1445.)

On April 7, 2009, plaintiff reported foot surgery but no Crohn's disease symptoms. Nurse Crawford administered Remicade. (Tr. 1446.)

On April 21, 2009, plaintiff complained of continued lower abdominal pain and twelve to fourteen bowel movements per day. Dr. Bartalos's impression was Crohn's disease with signs of active disease and chronic abdominal pain. He prescribed Imodium.[22] (Tr. 1159-61.)

On May 14, 2009, plaintiff complained of ten to twelve bowel movements per day, bloody stools, abdominal cramps, and fatigue. Nurse Crawford administered Remicade. (Tr. 1447.)

On June 15, 2009, plaintiff reported that he fell at a party, hit his head, dislocated his shoulder, and went to the emergency room. He further reported four or five bowel movements per day but no other Crohn's disease symptoms. Nurse Crawford administered Remicade. (Tr. 1448.)

On July 7, 2009, plaintiff complained of ten to twelve bowel movements per day, nocturnal bowel movements, intermittent bloody stools, and fecal incontinence when performing heavy lifting. He reported that Lomotil worsened the symptoms and that fiber increased the abdominal pain.[23] The impression of John Ryan Cunningham, M.D., was ileocolonic Crohn's disease, and he prescribed cholestyramine. (Tr. 1155-58.)

On July 20, 2009, plaintiff complained of several bowel movements per day but reported decreased cramping. Nurse Crawford administered Remicade. (Tr. 1449.)

On August 25, 2009, plaintiff complained of diarrhea, fatigue, ten to twelve bowel movements per day, increased cramping, and bloody stools. Nurse Crawford administered Remicade. (Tr. 1115-16.)

---

[22] Imodium is also known as loperamide. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[23] Lomotil is used to treat diarrhea. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

On September 29, 2009, plaintiff complained of diarrhea, bloody stools, and ten to twelve bowel movements per day. Nurse Crawford administered Remicade. (Tr. 1117-18.)

On October 6, 2009, plaintiff reported that Questran increased the severity of diarrhea and abdominal cramps and that he stopped taking Questran after two weeks.[24] He complained of significant abdominal pain, ten to twelve bowel movements per day, nocturnal bowel movements, more frequent bloody stools, and significant weight loss. He reported that he observed improved energy but no other change in symptoms following Remicade treatment. He further reported that cholestyramine did not improve the diarrhea. Dr. Cunningham's impression was poorly controlled ileocolonic Crohn's disease, and he scheduled a colonoscopy. (Tr. 1151-54.)

On November 2, 2009, plaintiff described his condition as "pretty good." Nurse Crawford administered Remicade. (Tr. 1119-20.)

On November 12, 2009, a colonoscopy revealed status post right hemicolectomy and ilectomy with no evidence of active disease and large internal hemorrhoids. (Tr. 824-27.)

On December 1, 2009, plaintiff reported that he began taking Bentyl, which eliminated the diarrhea.[25] He further reported three or four bowel movements per day, no nocturnal symptoms, and significant improvement. Dr. Cunningham's impression was well-controlled ileocolonic Crohn's disease. (Tr. 1147-50.)

On December 7, 2009, plaintiff reported less diarrhea and no bloody stools. Nurse Crawford administered Remicade. (Tr. 1119-20.)

On December 21, 2009, plaintiff complained of chest pain, lightheadedness, nausea, and profuse sweating. George C. Vournas diagnosed acute ST elevation anterior myrocardial infraction. Plaintiff underwent a successful stent placement and received prescriptions for Ecotrin, Coreg, Plavix, and Prinivil.[26] He was discharged on December 19, 2009. (Tr. 1323-80.)

---

[24] Questran is also known as cholestyramine. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[25] Bentyl is used to treat irritable bowel syndrome. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[26] Ecotrin is used to reduce fever and relieve mild to moderate pain. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014). Coreg is used to treat high blood pressure and heart failure. Id. Plavix is used to treat heart failure. Id. Prinvil is used to treat high blood pressure. Id.

On January 8, 2010, plaintiff complained of burning chest pain that began three days earlier. Jeff P. Ciaramita, M.D., assessed chest pain, hypertension, and Crohn's disease. Plaintiff did not complain of further pain during an overnight stay. A pulmonary function test revealed a mild diffusion abnormality but no ventilator defect. Vishwam R. Pandya, M.D., diagnosed chest pain likely due to gastroesophageal reflux disease, coronary artery disease, and hypertension. He discontinued clonidine, and increased the dosage of lisinopril and Coreg.[27] (Tr. 1381-1400.)

On February 9, 2010, plaintiff complained of cramping and diarrhea. Nurse Crawford administered Remicade. (Tr. 1123-24.)

On February 24, 2010, plaintiff complained of pain in the left kidney area and bloody stools. Dr. Keith assessed rectal bleeding and Crohn's disease. (Tr. 1009.)

On February 26, 2010, plaintiff complained of increased abdominal pain, diarrhea, and bloody stools that began ten days earlier. Ultrasounds of the kidney and bladder revealed no abnormalities. X-rays of the abdomen revealed a gas-filled colon and gas in the small bowel. Chest X-rays revealed no acute findings. An endoscopy revealed normal colon and ileum and an internal hemorrhoid. Deepa S. Prahakar, M.D., diagnosed internal hemorrhoids. (Tr. 795-823.)

On March 17, 2010, plaintiff complained of diarrhea and daily cramping. Nurse Crawford administered Remicade. (Tr. 1125-26.)

On April 5, 2010, colonoscopy biopsies revealed no evidence of cancer or infection. (Tr. 1146.)

On April 20, 2010, plaintiff complained of fatigue, chest pains, diarrhea, and cramps. Nurse Crawford administered Remicade. (Tr. 1127-28.)

On May 4, 2010, plaintiff arrived at the emergency room, complaining of chest pain that radiated to the left arm. An electrocardiogram revealed no significant ischemic changes. Joseph L. Polizzi, M.D. assessed chest pain, coronary artery disease, hypertension, dyslipidemia, and tobacco abuse. He recommended a left heart catheterization and encouraged plaintiff to stop smoking. (Tr. 1401-29.)

On May 18, 2010, plaintiff complained of sharp pain in the kidney area. Dr. Keith assessed Crohn's disease and flank pain. (Tr. 1005.)

---

[27] Clonidine is used to treat high blood pressure. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014). Lisinopril is also known as Prinivil. Id.

On June 11, 2010, plaintiff reported plans for divorce. He received an assessment of depression and insomnia and prescriptions for trazodone and Wellbutrin.[28] (Tr. 1004.)

On June 21, 2010, plaintiff complained of depression and insomnia but reported that his spouse requested that he move back into their home. He further complained of a lack of energy and feelings of worthlessness. He reported smoking one and a half packs of cigarettes per day. Plaintiff had not worked since April 2006 due to Crohn's disease and surgical procedures. He completed the ninth grade and had applied for disability benefits. The impression of Krystal Witthaus, LCSW, was mild, single episode, major depressive disorder, and she assessed a GAF of 58.[29] (Tr. 994-96.)

On June 22, 2010, plaintiff reported falling on a sidewalk and complained of dizziness, left wrist pain, and blacking out. He received an assessment of syncopal episode, Crohn's disease, and left wrist pain. (Tr. 1003.)

On June 23, 2010, plaintiff complained of chest discomfort that radiated to the neck, palpitations, edema, syncope, and dyspnea. Chest X-rays revealed no active cardiopulmonary process but suggested emphysematous change in the lungs. An echocardiograph revealed moderate left ventricle dysfunction with severe hypokinesis and mild mitral and tricuspid regurgitation. The impression of John M. Mohart, M.D., was coronary artery disease, syncope, hypertension, and hypercholesterolemia. (Tr. 1018.)

On June 25, 2010, plaintiff underwent a left heart catheterization, which revealed anterior apical hypokinesis and moderate left ventricular systolic dysfunction. Dr. Mohart's impression was coronary artery disease and ischemic cardiomyopathy. (Tr. 1029-32.)

---

[28] Trazodone is an antidepressant. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

[29] A GAF score helps summarize a patient's overall ability to function. A GAF score has two components. The first component covers symptom severity and the second component covers functioning. A patient's GAF score represents the worst of the two components.
On the GAF scale, a score from 51 to 60 represents moderate symptoms (such as flat affect and circumstantial speech, occasional panic attacks), or moderate difficulty in social, occupational, or school functioning (such as few friends, conflicts with peers or co-workers). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32–34 (4th ed. 2000).

On June 28, 2010, plaintiff attended a psychotherapy session and reported a recent float trip. He further reported that he received a defibrillator. (Tr. 992-93, 997-98.)

On June 29, 2010, plaintiff complained of occasional chest pain and wore a life vest defibrillator. Nurse Crawford administered Remicade. (Tr. 1111-12.)

On June 20, 2010, plaintiff complained of cardiomyopathy, palpitations, and hypertension. Dr. Mohson's impression was coronary artery disease and ischemic cardiomyopathy. (Tr. 1016-17.)

On July 1, 2010, a three-day heart monitor revealed a baseline sinus rhythm rate of 72 beats per minute, an occurrence of sinus tachycardia, and an occurrence of ectopy. (Tr. 1025.)

On July 7, 2010, plaintiff underwent a cardioverter defibrillator implantation. (Tr. 980-87, 1026-28.)

On July 19, 2010, plaintiff reported no palpitations or blackouts since the implantation of the defibrillator and no chest pain. The impression of Brian A. Seeck, M.D., was multi-vessel coronary artery disease, ischemic cardiomyopathy, and hypercholesterolemia. (Tr. 1014-15.)

On August 3, 2010, Dr. Mohart observed the proper functioning on the defibrillator and no episodes of ventricular tachycardia. (Tr. 1024.)

On August 11, 2010, plaintiff reported six bowel movements per day and occasional hematochezia but denied abdominal pain or nausea. The impression of Abdo Maroun Saad, M.D., was Crohn's disease and diarrhea, and he prescribed Imodium and hydrocortisone.[30] (Tr. 1143-45.)

On December 27, 2010, Joseph M. Long, Ph.D., performed a psychological evaluation on plaintiff based on 2010 counseling notes and an appointment with plaintiff. He observed moderately sad and dysphoric affect and found plaintiff's intellect in the average to low average range. Plaintiff reported the following   He has not obtained a GED and has worked in construction, factory work, commercial truck driving, and mussel harvesting. His spouse worked as a certified nursing assistant. He receives food stamps and Medicaid. He keeps toilet paper and spare clothing nearby due to Crohn's disease and has at least seven or eight bowel movements per day. He takes Trazodone for sleep, but bowel movements interrupt his sleep. Infusion treatments alleviate the symptoms for a few weeks. He also takes Wellbutrin for depression and sees a

---

[30] Hydrocortisone is a corticosteroid used to reduce allergic-type symptoms. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014).

therapist monthly. He tries to avoid people and has outbursts of anger. He complained about his inability to perform as he once did. He takes up to five Percocet per day to manage pain from bowel spasms. On a typical day, he sits, draws, and plays Yahtzee. He avoids leaving his home due to Crohn's disease. His spouse manages bill payment due to his forgetfulness. Dr. Long's impression was mood disorder, major depressive disorder, posttraumatic stress disorder, and ADHD. He found moderate impairment with plaintiff's ability to understand and remember instructions and the ability to sustain concentration and persistence with tasks and found marked impairments with social and adaptive function. (Tr. 1228-30.)

On September 30, 2010, plaintiff arrived at the emergency room, complaining of a left pinky finger laceration. He reported that, as he observed another person cut metal, the grinding wheel broke, flew across the room, and hit his finger. He also reported smoking a half pack of cigarettes per day. X-rays of the finger revealed a tiny bone chip. The impression of Dean Breshears, M.D., was open fracture and laceration of the left pinky finger. (Tr. 1270-73.)

On October 20, 2010, plaintiff complained of chest discomfort, rare palpitations, ankle edema, and dyspnea caused by mild activity. Dr. Mohart's impression was ischemic cardiomyopathy, hypertension, hypercholesterolemia, and angina. (Tr. 1222-23.)

On December 28, 2010, plaintiff reported five or six bowel movements per day and occasional bloody stools. Abhishek Choudhary, M.D., recommended that plaintiff take more Imodium to decrease the frequency of bowel movements. (Tr. 1303-05.)

On January 7, 2011, Ron Selinger submitted a Physical Residual Functional Capacity Assessment form regarding plaintiff. He found that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and walk about six hours in an eight-hour workday, and sit for less than six hours. He further found that plaintiff could occasionally climb ramps, stairs, ladders, rope, and scaffolds, balance, stoop, kneel, crouch, and crawl and should avoid concentrated exposure to extreme temperatures. (Tr. 651-58.)

Also on January 7, 2011, Ron Selinger submitted a Psychiatric Review Technique form regarding plaintiff. He found that plaintiff suffered the medically determinable impairment of situational depression. He further found that plaintiff suffered mild restriction of daily living activities, mild difficulties with social function, and marked difficulties with concentration, persistence, and pace. (Tr. 659-70.)

Additionally, Ron Selinger submitted a Mental Residual Functional Capacity Assessment form regarding plaintiff. He found moderate limitations with the ability to understand and remember detailed instructions. He further found moderate limitations with the ability to perform detailed instructions, the ability to maintain attention and concentration, the ability to maintain a schedule and regular, punctual attendance, and the ability to complete a normal work schedule without interruptions from psychological symptoms and with unreasonable rest periods. He also found moderate limitations with the ability to respond appropriately to changes in the work setting. He concluded that plaintiff retained the ability to understand, remember, and perform one or two step instructions. (Tr. 671-73.)

On January 21, 2011, plaintiff reported no palpitations or syncope and that he stopped smoking cigarettes two weeks earlier. He complained of chest discomfort that radiated to the shoulder and back and accompanying nausea and dyspnea. He reported that rest and nitroglycerin relieved the chest pain. Dr. Mohart's impression was coronary artery disease, hypertension, and hypercholesterolemia. (Tr. 1274-76.)

On January 24, 2011, plaintiff reported no bowel movement and vomiting during the past three days. X-rays of the chest and abdomen revealed no bowel obstruction. (Tr. 1265.)

On January 28, 2011, plaintiff complained of palpitations and chest discomfort that radiated to the left arm and shoulders. Dr. Mohart's impression was angina, coronary artery disease, and tobacco abuse. He recommended a left heart catheterization and that plaintiff discontinue smoking cigarettes. (Tr. 1277-78.)

On March 10, 2011, plaintiff arrived at the emergency room, complaining of emesis occasionally containing undigested food consumed multiple days earlier and that he had experienced nausea and vomiting for two months. The vomiting episodes occurred three to four times per day. He further complained of dizziness, abdominal pain, difficulty swallowing, and frequent thirst and reported four or five bowel movements per day. He reported sleeping only two hours of sleep per night. Additionally, he reported smoking one half pack of cigarettes per day and frequent marijuana use. Dr. Hall prescribed Zofran and replaced Zantac with Nexium.[31] An abdominal CT scan revealed atherosclerosis and non-obstructing left renal calculus. Divya

_____

[31] Zofran is used to prevent nausea and vomiting. WebMD, http://www.webmd.com/drugs (last visited on August 13, 2014). Zantac is used to prevent and treat heartburn. Id.

Gupta, M.D., diagnosed esophagitis and administered proton pump inhibitors.[32]  On March 13, 2011, the symptoms had resolved, and plaintiff was discharged.  (Tr. 1283-99, 1309-19.)

On April 5, 2011, plaintiff complained of nausea and vomiting and reported diagnoses of esophagitis, Schatzki ring, and hiatal hernia that proton pump inhibitors resolved.[33]  He reported seven or eight bowel movements per day, occasional bloody stools, and bloating.  Michelle Matteson, NP, recommended a gastric emptying study, and her impression was nausea, vomiting, and Crohn's disease.  (Tr. 1306-08.)

On May 3, 2011, Dr. Keith wrote that plaintiff had severe Crohn's disease that caused ten to twenty bowel movements per day during stable times.  He stated that during flares, which occurred about a quarter of the time, plaintiff had thirty or more bowel movements per day.  He further noted that plaintiff had angina and decreased cardiac function due to coronary artery disease.  He also noted erosive esophagitis.  He concluded that the medical impairments would cause difficulty with maintaining a schedule.  (Tr. 1430.)

On May 11, 2011, plaintiff received an esophagogastroduodenoscopy, which revealed healed esophagitis and a hiatal hernia.  Jack D. Bragg, D.O, recommended a solid-phase gastric emptying study and that plaintiff discontinue smoking.  (Tr. 1470-71.)

On May 17, 2011, plaintiff reported seven or eight bowel movements per day and that he received Remicade treatment at home in five-week intervals.  He further reported increased symptoms during weeks immediately preceding Remicade treatment.  Hazem Tawfiq Hammad, M.D., prescribed Cipro and Flagyl and considered increasing the frequency of Remicade treatments.  (Tr. 1467-69.)

**First ALJ Hearing**

The ALJ conducted a hearing on September 17, 2008.  (Tr. 7-20.)  Plaintiff testified to the following.  He is forty-nine years old, engaged, and has lived with his fiancé in a doublewide

---

[32] Esophagitis is the inflammation of the esophagus.  Stedman at 670.  Proton pump inhibitors block stomach acid production.  WebMD, http://www.webmd.com/heartburn-gerd/guide/prescription-treatments (last visited August 13, 2014).

[33] Schatzki's ring is a common, benign accumulation of tissue in a ring around the low end of the esophagus.  WebMD, http://www.webmd.com/digestive-disorders/picture-of-the-esophagus (last visited August 13, 2014).

trailer for five and a half years. He completed the eighth grade and has not obtained a GED. He measures five feet, seven inches and weighs 145 pounds. His weight fluctuates fifteen to twenty pounds each month due to Crohn's disease. Remicade treatment causes more eating until the treatment expires, which results in increased bowel movements. (Tr. 11-14.)

On April 18, 2006, the onset date, the Crohn's disease flared, and he went to a hospital. He experienced diarrhea and shooting pain in his abdomen. In a surgical procedure, the small intestine, parts of a large intestine and colon, and the appendix were removed. Afterwards, he received several prescriptions and began Remicade treatment. He receives Remicade treatment at home every five weeks for three to four hours. Afterwards, cramps and diarrhea become less severe. However, he often overexerts, for example, by lifting more than ten pounds or mowing the lawn. At best, he has eight bowel movements per day and continues to have accidents while sleeping or walking, which occur without warning. During the last two weeks before the scheduled Remicade treatment, he has thirteen to sixteen bowel movements per day, bloody stools, and loses weight. Additionally, he has more pain and cramps accompanied by depression and moodiness. His energy decreases, and he struggles to leave his bed. (Tr. 14-17.)

He suffers from depression and mood fluctuations. His medication inhibits sexual activity, the ability to perform household chores, and his social life. He must sit every hour for fifteen minutes. He must lie twice per day for a half four to forty-five minutes. He can stand for only an hour before his feet swell. He can drive, but his fiancé usually drives. When driving, he often has to stop for bathroom breaks. When he leaves his home, he avoids eating to reduce the severity of accidents and always brings an extra set of clothing. (Tr. 18-20.)

**First Decision of the ALJ**

On December 10, 2008, the ALJ found plaintiff not disabled. (Tr. 27-33.) Plaintiff sought judicial review, and on September 22, 2010, the district court remanded the decision to the ALJ to obtain vocational expert testimony. (Tr. 645.)

**Second ALJ Hearing**

On May 24, 2011, a different ALJ conducted a second hearing. (Tr. 617-37.) Plaintiff testified to the following. He is fifty-two years old and completed the eighth grade. In 1996, he

received the initial diagnosis of Crohn's disease and did not work for one year. In 1997 and 1998, he worked as a gravel truck driver for David McDaniel. In 1999, he prepared orders for Central South Music Sales, a CD and video distributor. The job required him to stand and walk throughout the day. In 2000, he worked as a self-employed mussel diver in Tennessee. He performed the job throughout most of the year due to the use of a hot water system. In 2002, he installed wiring and flooring in trailers for Load Master. In 2005 and 2006, he assembled showcases for Jahovah Industries. Some showcases weighed about 100 pounds, which he lifted with assistance. The employer terminated him after he went to the hospital for four days due to Crohn's disease. (Tr. 619-23.)

At the end of 2007, Crohn's disease flares caused ten to twelve bowel movements per day. He currently has eight or nine bowel movements per day. He receives infusions off Remicade every five weeks. He started psychiatric care in 2009 due to constant depression, which caused crying and difficulty leaving his bed. On July 7, 2010, he received a defibrillator pacemaker due to a December 2009 heart attack. (Tr. 623-25.)

In May 2007, the Remicade dosage was increased to increase energy and to decrease the frequency of bowel movements. He also received prednisone for cramping, pain, and indigestion. He has had esophagitis for six months. Remicade treatment improves energy and cramping, but the last seven to ten days before the next Remicade session, fatigue, cramping, and bowel movements increase in severity and frequency. Walking fifty feet causes fatigue, and he sits in a recliner eighty to ninety percent of the day and remains near restrooms. He has seven to eight bowel movements per day and has accidents in the bed. He also has mood swings, crying spells, and outbursts. Depression and impotency is a side effect of Remicade. He takes pain medication three or four times per day. Medication also causes forgetfulness. His condition forces him to change clothes three times per week. His weight fluctuates fifteen to twenty pounds every month. Esophagitis causes vomiting. He experiences shortness of breath. He takes nitroglycerin for chest pain at least twice per week, which controls the pain. (Tr. 625-29.)

Vocational expert (VE) Jack McGowan also testified at the hearing. The ALJ presented a hypothetical individual with plaintiff's age, education, and work experience, who could lift and carry twenty pounds occasionally, ten pound frequently, stand and walk for six of eight hours, sit for six hours, and required bathroom accessibility. The VE responded that such individual could

not perform plaintiff's past work, but could perform as a mall clerk, which is light, unskilled work with 140,700 positions nationally and 4,930 positions in Missouri, and small parts assembler, which is light, unskilled work with 345,000 positions nationally and 8,600 positions in Missouri. The bathroom accessibility requirement halves the number of positions for each of those jobs. Additionally, the ability to understand and remember simple instructions and undetailed tasks does not alter the number of positions. (Tr. 630-32.)

The ALJ presented a second hypothetical individual, who could lift ten pounds occasionally and less than ten pounds frequently, stand and walk for two hours, sit for six hours, and required bathroom access. The VE responded that such individual could work as an optical goods assembler, which is sedentary, unskilled work with 68,600 positions nationally and 1,160 positions in Missouri, and printed circuit board assembly, which is sedentary, unskilled work with 355,000 positions nationally and 5,000 positions in Missouri. The bathroom accessibility requirement halves the number of positions for each of those jobs. (Tr. 632-33.)

Except for lunch and two breaks, very little absence from the work station would be tolerated. Plaintiff could perform no work according to his testimony regarding rest requirements. Employers would likely tolerate the required number of bathroom breaks. Marked impairments of social functioning and adaptive functioning and moderate impairment of concentration and persistence would not alter the number of job positions. (Tr. 634-37.)

## III. DECISION OF THE ALJ

On June 8, 2011, the ALJ found plaintiff not disabled before October 17, 2008. (Tr. 1476-83.) At Step One of the prescribed regulatory decision-making scheme,[34] the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date, April 18, 2006. At Step Two, the ALJ found that plaintiff had the severe impairment of Crohn's disease since April 18, 2006 and had the severe impairments of mood disorder, cardiomyopathy, and coronary artery disease since October 17, 2008. (Tr. 1478.)

At Step Three, the ALJ found that plaintiff had no impairment or combination of impairments that met or was the medical equivalent of an impairment on the Commissioner's list of presumptively disabling impairments. (Tr. 1479.)

_____

[34] See below for explanation.

The ALJ considered the record and found that plaintiff had the residual functional capacity (RFC) to perform sedentary work, except that he required access to a restroom.  At Step Four, the ALJ determined that plaintiff could perform no past relevant work.  (Tr. 1481.)

At Step Five, the ALJ found plaintiff disabled beginning but not prior to October 17, 2008.  (Tr. 1481.)

## IV.  GENERAL LEGAL PRINCIPLES

The court's role on judicial review of the Commissioner's decision is to determine whether the Commissioner's findings comply with the relevant legal requirements and are supported by substantial evidence in the record as a whole.  Pate-Fires v. Astrue, 564 F.3d 935, 942 (8th Cir. 2009).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  Id.  In determining whether the evidence is substantial, the court considers evidence that both supports and detracts from the Commissioner's decision.  Id.  As long as substantial evidence supports the decision, the court may not reverse it merely because substantial evidence exists in the record that would support a contrary outcome or because the court would have decided the case differently.  See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove he is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment that would either result in death or which has lasted or could be expected to last for at least twelve continuous months.  42 U.S.C. §§ 423(a)(1)(D), (d)(1)(A); Pate-Fires, 564 F.3d at 942.  A five-step regulatory framework is used to determine whether an individual is disabled.  20 C.F.R. § 404.1520(a)(4); see also Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (describing the five-step process); Pate-Fires, 564 F.3d at 942 (same).

Steps One through Three require the claimant to prove (1) he is not currently engaged in substantial gainful activity, (2) he suffers from a severe impairment, and (3) his disability meets or equals a listed impairment.  20 C.F.R. § 404.1520(a)(4)(i)-(iii).  If the claimant does not suffer from a listed impairment or its equivalent, the Commissioner's analysis proceeds to Steps Four and Five.  Step Four requires the Commissioner to consider whether the claimant retains the RFC to perform his past relevant work (PRW).  Id. § 404.1520(a)(4)(iv).  The claimant bears the

burden of demonstrating he is no longer able to return to his PRW.  <u>Pate-Fires</u>, 564 F.3d at 942. If the Commissioner determines the claimant cannot return to PRW, the burden shifts to the Commissioner at Step Five to show the claimant retains the RFC to perform other work that exists in significant numbers in the national economy.  <u>Id.</u>; 20 C.F.R. § 404.1520(a)(4)(v).

## V.  DISCUSSION

Plaintiff argues that the ALJ erred by failing to support the RFC determination with substantial evidence.  Residual functional capacity is the ability of a claimant "to do the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world."  <u>Wilcutts v. Apfel</u>, 143 F.3d 1134, 1137 (8th Cir. 1998). Residual functional capacity is a medical determination.  <u>Singh v. Apfel</u>, 222 F.3d 448, 451 (8th Cir. 2000).  Some medical evidence must support the RFC determination.  <u>Lauer v. Apfel</u>, 245 F.3d 700, 704 (8th Cir. 2001).  A claimant's work history with the allegedly disabling medical conditions is a valid consideration.  <u>Van Vickle v. Astrue</u>, 539 F.3d 825, 830 (8th Cir. 2008). Additionally, the ALJ may consider the lack of an opinion from medical providers regarding a claimant's ability to work.  <u>Raney v. Barnhart</u>, 396 F.3d 1007, 1010 (8th Cir. 2005).

Regarding plaintiff's RFC determination between April 18, 2006, and October 17, 2008, the ALJ considered the treatment notes of Dr. Bartalos, plaintiff's treating gastroenterologist.  (Tr. 1479-80.)  He considered the lack of medical advice to not seek employment.  (Tr. 1481.)  He further noted that plaintiff worked nine years after the initial diagnosis in 1996.    (<u>Id.</u>) Additionally, he noted that he relied on plaintiff's heart attack in December 2009 and mental health treatment records in December 2010 to find plaintiff disabled beginning October 17, 2008. (<u>Id.</u>)  The ALJ determined that, prior to October 17, 2008 plaintiff could perform only sedentary work and required bathroom access.  (Tr. 1479.)

Plaintiff points to Dr. Bartalos' letter, dated September 16, 2008 regarding his inability to work; however, the letter includes no statement addressing plaintiff's ability to work. (Tr. 611.) Additionally, plaintiff testified that he received the initial diagnosis of Crohn's disease in 1996 and that his employment history between 1997 and 2006 included truck driving, order preparing, mussel diving, wire and floor installation, and showcase assembly.  (Tr. 620-23.)  Accordingly, substantial evidence supports the ALJ's decision.

Plaintiff also argues that the ALJ's hypothetical question presented to the VE did not adequately account for the frequency of plaintiff's bowel movements. "Testimony based on hypothetical questions that do not encompass all relevant impairments cannot constitute substantial evidence to support the ALJ's decision." Hillier v. Social Sec. Admin., 486 F.3d 359, 365 (8th Cir. 2007). "Hypothetical questions should set forth impairments supported by substantial evidence on the record and accepted as true and capture the 'concrete consequences' of those impairments." Id.

Plaintiff presented to the VE his concern regarding the frequency of bowel movements. (Tr. 634.) The VE responded that he mentioned solely jobs without a strict rate of production. (Id.) The VE also indicated that most employers would allow the seven to eight restroom breaks per day. (Tr. 635.) Thus, even assuming that the bathroom accessibility requirement did not adequately account for plaintiff's bathroom needs, the VE's testimony indicates the specific consideration of the frequency of plaintiff's bowel movements. Therefore, even if the ALJ erred by failing to adequately account for the frequency of bowel movements in the hypothetical question, the VE's consideration of the condition in his response rendered the error harmless.

## VI.  RECOMMENDATION

For the reasons set forth above, it is the recommendation of the undersigned that the final decision of the Commissioner of Social Security be affirmed.

The parties are advised that they have 14 days to file written objections to this Report and Recommendation. The failure to file timely written objections may waive the right to appeal issues of fact.

/s/ David D. Noce

**UNITED STATES MAGISTRATE JUDGE**

Signed on August 19, 2014.